IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| In re: Albert Delong<br>SSN: xxx-xx-3550<br><br>Debtor. | Case No.: 17-81529-CRJ-7<br><br>Chapter 7 |

## CREDITOR'S RESPONSE TO DEBTOR'S
## MOTION FOR CONTEMPT CITATION AND FOR SANCTIONS

COMES NOW Highlands Hospitalists Services, LLC ("**HHS**") and responds to Albert Delong's (the "**Debtor**") Motion for Contempt Citation and Sanctions (the "**Motion**") as follows:

### PRELIMINARY STATEMENT

1. HHS admits that this matter constitutes a core proceeding under Title 11 of the United States Code, that venue is proper with this Court, and that this Court maintains personal jurisdiction over it.

2. Based on information and belief, HHS admits that Holloway Credit Solutions, LLC ("**Holloway**") sent a single letter to the Debtor in December 2020 in an attempt to collect a debt.

3. Further, and based on information and belief, HHS admits that Holloway's collection activity occurred approximately one month after this Court entered a discharge order in favor of the Debtor pursuant to 11 U.S.C. § 727.

4. As defenses and mitigating factors, HHS denies that the Debtor scheduled it as a creditor in his case, that it had actual notice of the bankruptcy, that it intentionally violated any state or federal laws, or that the Debtor is entitled to the relief sought as pled in his Motion.

5. HHS takes responsibility for any mistakes or errors it made and, in an effort to minimize costs and preserve judicial economy, wishes to resolve this matter expeditiously.

### FACTS

6. Between July 7 to 8, 2020, during the pendency of the Debtor's Chapter 13 case, Mr. Delong sought medical treatment from HHS.

7. Less than one week later, the Debtor voluntarily converted his case from a Chapter 13 proceeding to a Chapter 7 liquidation.

8. Both in his original bankruptcy schedules and any amendments, the Debtor did not list HHS as a creditor.

9. On July 14, 2020, on the date of conversion, the Debtor amended his bankruptcy schedules to list "Highland Medical Center" as an unsecured creditor:

> **AMENDMENT TO SCHEDULES**
>
> **COMES NOW** the Debtor, Albert Delong, in the above styled matter and hereby moves to amend the following Schedules for conversion.
>
> Schedule F to add the following unsecured creditors:
> Highland Medical Center       Unsecured, Non Priority
> 380 Woods Cove Rd.            Pre Conversion
> Scottsboro, AL 35768          $10,000.00

[ECF Doc. 40].

10. Notice to Highland Medical Center and HHS should not be conflated as the same. HHS admits that it has an affiliate relationship with Highland Medical Center. However, Highland Medical Center and HHS are not the same entity.

11. HHS is an Alabama limited liability company and service provider. Highland Medical Center is a trade name for a hospital operated by the Healthcare Authority for Jackson County, Alabama, a public governmental entity.

12. In effect, the Debtor amended his schedules to give notice of his bankruptcy conversion to a hospital at its physical address for the public, and now presently argues in the Motion that this notice should also be adequate to any and all service providers operating in connection to that hospital.

13. Approximately six months later, and unaware of the bankruptcy conversion, HHS turned over the Debtor's delinquent account to Holloway for collection, which, according to the Debtor, made one collection attempt against him via a mailed letter.

14. HHS states to this Court that it has procedures in place to prevent violations of 11 U.S.C. §§ 362 and 524. In this case, however, it did not receive notice of the conversion, and its attempts to bankruptcy-verification searches uncovered the Debtor's original Chapter 13 filing, commencing before the incursion of its debt, but not the Chapter 7 conversion.

15. The unique nature and docket entries associated with Chapter 13 cases that convert to Chapter 7 proceedings make it difficult for creditors with claims that arise post-Chapter 13 filing and pre-Chapter 7 conversion to determine when their debts become subject to applicable bankruptcy stays. This is not to say that creditors cannot find such information, but when a debtor mis-schedules or leaves off a creditor, an independent search may not reveal the conversion to Chapter 7, leading to mutual mistakes and inadvertent communications.

## LAW

16. The law surrounding violations of 11 U.S.C. § 362 and violations of 11 U.S.C. § 524 are distinct. The U.S. Supreme Court has stated that:

> The statutory provision that addresses the remedies for violations of automatic stays says that 'an individual injured by any willful violation' of an automatic stay 'shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages.' 11 U.S.C. § 362(k)(1). This language, however, differs from the more general language in section 105(a). The purposes of automatic stays and discharge orders also differ: A stay aims to prevent damaging disruptions to the administration of a bankruptcy case in the short run, whereas a discharge is entered at the end of the case and seeks to bind creditors over a much longer period.

*Taggart v. Lorenzen*, 139 S. Ct. 1795, 1804 (2019) (internal citations omitted).

17. The Eleventh Circuit interpreted *Taggart* to emphasize the following for an analysis of whether sanctions are appropriate for claims involving violations of the 11 U.S.C. § 524 discharge injunction:

> Accordingly, we first determine whether a communication is a prohibited debt collection under section 524 by looking to 'whether the objective effect of the creditor's action is to pressure a debtor to repay a discharged debt.' If so, we then evaluate whether that violation of the discharge injunction is sanctionable under

section 105, by determining if 'there is *no fair ground of doubt* as to whether the order barred the creditor's conduct.'

*In re Roth*, 935 F. 3d 1270, 1276 (11th Cir. 2019) (emphasis original; internal citations omitted).

18. This Court has considered the issue of an alleged violation of 11 U.S.C. § 524 in light of the *Taggart* and *Roth* decisions. In *In re Jenkins*, 608 B.R. 565 (Bankr. N. D. Ala. 2019), this Court balanced the equities between a creditor's claim that 11 U.S.C. § 523(a)(7) may have rendered its post-petition collection activities exempt from discharge *post facto* and the debtor's averment that such activity triggered contempt of the discharge order and sanctions. In light of the arguments, this Court found that evidence of sufficient doubt existed under the circumstances to negate a finding of contempt. This Court did not sanction the creditor in *Jenkins* but also barred it any further to collect that debt from the movant/debtor.

### ARGUMENT AND CONCLUSION

19. HHS states that, to the extent that it had notice of the Debtor's bankruptcy and its debt subject to the 11 U.S.C. § 523 discharge, its conduct constituted a violation of 11 U.S.C. § 524.

20. However, a violation of 11 U.S.C. § 524 does not stop the analysis for contempt and sanctions; under 11 U.S.C. § 105, and as stated by the Supreme Court: "Based on the traditional principles that govern civil contempt, the proper standard is an objective one. A court may hold a creditor in civil contempt for violating a discharge order where there is not a 'fair ground of doubt' as to whether the creditor's conduct might be lawful under the discharge order. *Taggart* at 1804.

21. As mitigating factors for a finding of sanctions and contempt, HHS restates that its collection agent sent a single letter and not a series of attempts to harass, the debtor's schedules conflated it with the Healthcare Authority for Jackson County, Alabama for notice purposes, and the unique nature of Chapter 13 conversions to Chapter 7 proceedings make it difficult for creditors with policies and procedures to prevent stay violations from independently detecting a conversion – this problem is compounded when a debtor mis-schedules a debt. Finally, the Debtor's damages appear limited to the inconvenience of receiving a single collection letter for medical services rendered just before his case's conversion.

22. Had the Debtor contacted HHS or, presumably Holloway, before seeking to reopen this case, the problem could have been remedied without expending judicial resources.

23. Again, HHS does not wish to prolong this matter or engage in any further discovery or arguments beyond what this Court needs to render a decision. Instead, it submits this response to rebut the Debtor's allegations that it acted in bad faith to violate federal law or otherwise intended to harm the debtor or disregard this Court's orders.

24. HHS accepts any responsibility as determined by this Court.

WHEREFORE, premises considered, Highlands Hospitalists Services, LLC respectfully requests for this Court to enter an Order: (i) denying the relief sought by the Debtor in his Motion; and (ii) granting such relief as this Court deems just and proper.

Respectfully submitted this the 12th day of April, 2021.

*/s/ Tazewell T. Shepard IV*
Tazewell T. Shepard IV
*Attorney for Highlands Hospitalists Services, LLC*
**SPARKMAN, SHEPARD & MORRIS, P.C.**
P.O. Box 19045
Huntsville, AL 35804
(256) 512-9924
ty@ssmattorneys.com

### CERTIFICATE OF SERVICE

This is to certify that I have this the 12th day of April, 2021 served the foregoing document upon all parties requesting notice, John C. Larsen, Attorney for the Debtor, and Judith Thompson, Chapter 7 Trustee by electronic service through the Court's CM/ECF system   by placing a copy of the same in the U. S. Mail, postage prepaid.

*/s/ Tazewell T. Shepard IV*
Tazewell T. Shepard IV